THE MARION-RESERVE POWER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 107549. Promulgated January 29, 1943.

*F. A. Schutte, Esq.*, for the petitioner.
*George R. Sherriff, Esq.*, for the respondent.

### OPINION.

ARUNDELL, *Judge*: Petitioner challenges a deficiency of $3,644.07 in income tax determined by respondent for the taxable year 1937. The only question for decision is whether petitioner is entitled to a dividend carry-over credit of $16,564.02 on account of dividends paid in 1936 by one of petitioner's predecessor companies in excess of the latter's adjusted net income for that year. The stipulated facts are adopted as our findings.

Petitioner is an Ohio corporation, with principal offices at Marion, Ohio. Its return for 1937 was filed with the collector for the eleventh district of Ohio.

Petitioner was organized on December 31, 1936, in accordance with an agreement of consolidation of four public service companies. During the calendar year 1936 the Reserve Power & Light Co., one of the constituent companies, paid dividends which exceeded its adjusted net income by $16,564.02. A dividends paid credit to the extent of its adjusted net income was allowed for 1936 to the Reserve Power & Light Co. Petitioner's return for 1937 claimed as part of its dividends paid credit the sum of $16,564.02, representing the unused portion of the dividends paid credit of the Reserve Power & Light Co. for 1936.

The consolidation agreement contained the following pertinent provisions, among others:

WHEREAS the parties hereto desire to consolidate themselves into a new, separate and distinct Corporation for the purposes of causing their respective businesses to be hereafter carried on by such new, separate and distinct Corporation, under and in pursuance of the laws of the State of Ohio, and so that the individual entities of each of the parties hereto shall thereafter cease; and

\* \* \* \* \* \* \*

FIFTEENTH: When this agreement is signed, acknowledged, filed and recorded, as required by law, the separate existence of the Constituent Corporations shall cease, except as continued in and consolidated into the New Corporation or as may be requisite for carrying out the purposes of this agreement of consolidation or as continued by statute, the New Corporation possessing all the rights

privileges, powers and franchises as well of a public as of a private nature, and being subject to all the restrictions, disabilities and duties of each of the Constituent Corporations, and all and singular, the rights, privileges, powers and franchises of each of the Constituent Corporations, and all property, real, personal, and mixed, and all debts due to each of the Constituent Corporations on whatever account, as well for stock subscriptions as all other things in action or belonging to each of the Constituent Corporations shall be vested in the New Corporation; * * * provided, that all rights of creditors and all liens upon the property of the Constituent Corporations shall be preserved unimpaired, limited in lien to the property affected by such liens at the time when this agreement shall become effective, and all debts, liabilities and duties of the Constituent Corporations shall thenceforth attach to the New Corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by the New Corporation. * * *

The same individual was president of each of the consolidating companies, and he became petitioner's president; and the same is true of the secretary of each of the consolidating companies, who became secretary of petitioner. Petitioner's authorized stock consisted of 18,884 preferred shares with a stated value of $100 per share and 20,000 common shares with a stated value of $20 per share. All the common stock was issued in exchange, share for share, for the 20,000 outstanding shares of common stock of the Reserve Power & Light Co. The latter's preferred stock, numbering 4,000 shares, was also exchanged on a share for share basis for shares of petitioner's preferred stock. Another of the consolidating companies, the Columbus, Delaware & Marion Electric Co., had outstanding 15,000 preferred and 75,050 common shares. The common shares and 7,512 of the preferred shares were surrendered for cancellation and none of petitioner's shares was issued in exchange therefor. Each of the remaining 7,488 preferred shares of the Columbus, Delaware & Marion Electric Co. was surrendered for 1⅓ shares of petitioner's preferred stock, or a total of 9,984 shares of petitioner's stock. The shareholders of the other two constituent companies, each of which had outstanding 300 shares of common stock, surrendered their shares for cancellation and no stock of petitioner was issued in exchange therefor. The result was that petitioner commenced business with 13,984 preferred shares outstanding out of an authorized issue of 18,884 shares, and with 20,000 shares of common stock authorized and outstanding. It appears from a schedule attached to petitioner's return for 1937, which is attached to and made a part of the stipulation of facts, that during the year 1937 petitioner issued the balance of its authorized preferred stock, 4,900 shares, to the Utility Service Co., which was not one of the consolidating companies, in payment of an indebtedness in the amount of $490,000 outstanding on January 1, 1937, presumably an obligation of one of the consolidating companies.

The narrow issue to be resolved is whether a new company resulting from a consolidation of four other companies is entitled to the dividend

carry-over credit authorized by section 27 (b) of the Revenue Act of 1936,[1] for dividends paid by one of the predecessors in the preceding year in excess of its adjusted net income. So far as we are advised the case is one of first impression.

Petitioner's argument runs as follows: The Reserve Power & Light Co. was entitled to the credit; a successor corporation in a statutory consolidation is, as a matter of law, the continuing corporate entity of its constituent companies; petitioner, as a result of a statutory consolidation, is the continuing corporate entity of the Reserve Power & Light Co.; consequently, petitioner is entitled to the credit.

It is clear, of course, that the business formerly conducted by the Reserve Power & Light Co. is now carried on by petitioner, that its shareholders exchanged their stock for a part of petitioner's capital stock, and that at least the president and secretary of the two companies were the same individuals. We may also assume that there was little or no change in the actual operation of the predecessor's business. The simple fact remains, however, that petitioner is not the same corporation as the Reserve Power & Light Co. That entity ceased to exist upon the consolidation, and petitioner, a new and distinct corporation, came into being. This result flowed from the acts of the consolidating companies and their expressed desire to create "a new, separate and distinct corporation * * * so that the individual entities of each of the parties hereto shall thereafter cease." The laws of the State of Ohio under which the consolidation was effected contemplated and authorized this result by providing that upon fulfillment of the outlined procedure "the separate existence of all of the constituent corporations * * * shall cease, * * * and the constituent corporations shall become a new corporation * * *." Page's Ohio General Code Annotated, vol. 6, sec. 8623–68. We do not feel called upon to express an opinion upon the various ramifications of the Ohio consolidation laws, for, whatever else may be said, petitioner is, in fact, a different corporation from the Reserve Power & Light Co. It embraced not only that company but three others. Its stock was issued to the stockholders of some of the predecessors, but not to those of the others; and,

---

[1] SEC. 27. CORPORATION CREDIT FOR DIVIDENDS PAID.

\*     \*     \*     \*     \*     \*     \*

(b) DIVIDEND CARRY-OVER.—In computing the dividends paid credit for any taxable year, if the dividends paid during the taxable year are less than the adjusted net income, there shall be allowed as part of the dividends paid credit, and in the following order:

(1) Dividends paid during the second preceding taxable year in excess of the adjusted net income for such year, to the extent not needed as a dividends paid credit for the taxable year preceding the taxable year the tax for which is being computed; and

(2) Dividends paid during the first preceding taxable year in excess of the adjusted net income for such year.

No credit shall be allowed for dividends paid by a corporation prior to its first taxable year under this title.

furthermore, some of its stock was issued to a creditor in apparent satisfaction of pre-existing indebtedness.

It scarcely requires citation of authority for the proposition that the carry-over of a dividends paid credit is a privilege accorded by legislative grace, to be strictly construed and made available only to those who bring themselves within the fair intendment of the statute. It is implicit in section 27 that the credit for dividends paid is allowable to a corporate taxpayer only for dividends paid by it; and certainly there is nothing in subsection (b) to authorize a credit carry-over from the corporation which paid the dividends to a different taxable entity. Nor are we able to see any fundamental principle or equity that requires the carry-over under the present circumstances. A tax upon undistributed income was imposed as a means of encouraging the distribution of current earnings each year. A credit for amounts distributed was therefore allowed; and a corporation that went beyond what was required of it in one year by making distributions in excess of its adjusted net income was to receive the benefit in the form of a credit for the excess in the succeeding year. To this extent the primary aim of the statute, to tax current earnings that remained undistributed, was subordinated in that the taxpayer might in the later year retain a portion of its earnings free of the undistributed profits tax. But the carry-over credit was inserted basically in furtherance of the primary aim, for "Without this provision the tendency would be to discourage quarterly dividends [in the earlier year], since dividends paid in excess of adjusted net income would never be credited *to the taxpayer*, if this carry-over was not permitted [emphasis added]." House Report 2475, 74th Cong., 2d sess., p. 8.

The taxpayer that paid dividends in excess of its adjusted net income in the present case has, through the voluntary action of its directors and stockholders, ceased to exist. A successor and distinct corporation, petitioner, failed in the tax year to distribute its entire adjusted net income. It is, therefore, subject to tax upon the undistributed portion, and we can not see that the purpose or spirit of the act would be served by allowing it a credit for dividends previously paid by a different, though perhaps related, taxpayer.

A suitable analogy is afforded by the many cases refusing to allow successor companies to deduct the carry-over net losses of their predecessors. *New Colonial Ice Co.* v *Helvering*, 292 U. S. 435. The argument made here by petitioner, that the successor in a statutory merger or consolidation is, as matter of law, the same taxable entity as the predecessor, has been uniformly rejected. *Pennsylvania Co. for Insurances on Lives & Granting Annuities* v. *Commissioner*, 75 Fed. (2d) 719, affirming 29 B. T. A. 1285; *Brandon Corporation* v. *Commissioner*, 71 Fed. (2d) 762; *Farmers Cotton Oil Co.*, 27 B. T. A. 105; *Elliott-*

*Granite Linen Corporation*, 26 B. T. A. 936; *Overbrook National Bank of Philadelphia*, 23 B. T. A. 1390; *Standard Silica Co.*, 22 B. T. A. 97. In *Brandon Corporation* v. *Commissioner*, *supra*, the court said:

* * * The three separate and independent corporations went out of business and were dissolved, and the petitioner, a new corporation, was formed to take over the assets and business of the three. The new corporation was an entirely different and separate entity, and therefore a different taxpayer.

It is true, as petitioner indicates, that the revenue acts involved in those cases used the words "the taxpayer" in providing that a loss sustained in one year should be allowed as a deduction in computing the net income "of the taxpayer" for the next year; whereas "taxpayer" does not appear in section 27 (b) of the 1936 Act. But, as already stated, the credit for dividends paid and the carry-over credit are allowable only for dividends paid by the taxpayer, and certainly argument to the contrary could not seriously be made, nor is it made here. The basic question here, as in the net loss cases, is whether the consolidated corporation is the same taxable entity as its predecessors. Upon authority of those cases, we hold that it is not.

Petitioner's chief reliance is upon a line of cases, which culminated in the Supreme Court's decisions in *Helvering* v. *Metropolitan Edison Co.*, 306 U. S. 522, and *General Gas & Electric Corporation* v. *Commissioner*, 306 U. S. 530, dealing with the right of a successor to deduct amortization of bond discount on bonds which had been issued by a predecessor and were assumed by the successor in a merger or consolidation. The issue was entirely different from the question involved here, for the element of carry-over from one taxable period or one taxable entity to another was not present. The Second Circuit distinguished the amortization cases from the loss carry-over cases upon the ground that in the former "no loss was sustained by the issuing corporations in selling their bonds at a discount; the loss will be sustained by the consolidated corporation when the bonds mature and are paid. Hence the deductions here in question are by way of anticipation of the taxpayer's own loss * * *." *New York Central Railroad Co.* v. *Commissioner*, 79 Fed. (2d) 247; certiorari denied, 296 U. S. 653. In other words the taxpayer in the amortization case was not attempting to benefit by a deduction or credit of the predecessor arising from previous operations, but was seeking to deduct or set aside an amount to meet an expense or obligation which the taxpayer itself had assumed. The issue turned upon whether the obligation had fallen upon the successor by operation of law, in which event the Commissioner conceded that the deduction was allowable, or by way of purchase, in which event the theory was that the burden of the discount had been taken into account at the time of the purchase. Indeed, as the opinion in *Helvering* v. *Metropolitan Edison Co.*, *supra*, states, the Commissioner conceded the very point

that is in issue here, namely, that the deduction was permissible if there had been a statutory merger or consolidation as opposed to a purchase. In these circumstances we do not believe that the Court's statement, to the effect that if a transfer "has all the elements of a merger and comes within the principle that the corporate personality of the transferor is drowned in that of the transferee, * * * the continuing corporation may deduct unamortized bond discount * * *," is to be taken to mean that as a general rule the corporation resulting from a statutory merger or consolidation is, as a matter of law, the same taxable entity as its constituent companies.

We are of opinion that the case at bar is governed by the principle stated as follows in *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, where a pre-affiliation loss of one company was denied as a deduction from the income of its affiliate upon a consolidated return:

> The general principle underlying the income tax statutes, ever since the adoption of the Sixteenth Amendment, has been the computation of gains and losses on the basis of an annual accounting for the transactions of the year. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, 363. A taxpayer who seeks an allowance for losses suffered in an earlier year must be able to point to a specific provision of the statute permitting the deduction, and must bring himself within its terms. Unless he can do this, the operations of the current year must be the measure of his burden.

In the instant case there is nothing to justify changing the income tax results of the present tax year on account of a credit for dividends paid by another in an earlier year.

Respondent's determination is accordingly sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*