LEHN & FINK PRODUCTS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 3742, 5420. Promulgated June 28, 1946.

*Montgomery B. Angell, Esq.*, and *Marvin Lyons, Esq.*, for the petitioner.

*Robert S. Garnett, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: The first question presented by these proceedings is whether petitioner is entitled to the election provided by section 808 of the Revenue Act of 1938, the pertinent provisions of which are as follows:

SEC. 808. BASIS OF PROPERTY ACQUIRED IN CONNECTION WITH LIQUIDATION.

* * * If upon the complete liquidation of a corporation within the meaning of section 112 (b) (6) of the Revenue Act of 1934, as amended, in case the first of the series of distributions in liquidation was made after August 29, 1935, and the last of the series of distributions was made before June 23, 1936, if with respect to all the property (other than money) received by a corporation prior to June 23, 1936, and in a taxable year beginning after December 31, 1935, no gain or loss would have been recognized on the receipt of such property under such section 112 (b) (6), the basis of such property in the hands of such corporation shall be the basis prescribed by the Revenue Act of 1934, as amended, if such corporation (within 180 days after the date of the enactment of the Revenue Act of 1938) elects, under regulations prescribed by the Commissioner, to have such basis apply.

Article 113 (a) (15)–1 (b) and (c) of Regulations 94, as amended by T. D. 4815, C. B. 1938–1, pp. 79 and 80, reads as follows:

(b) *Exception to general rule.*—In the case of property received in liquidation after December 31, 1935, and before June 23, 1936, in a taxable year of the recipient corporation beginning after December 31, 1935, the basis of such property in the hands of the recipient corporation shall be the basis prescribed by section 113 (a) (6) of the Revenue Act of 1934, as amended by the Revenue Act of 1935, if—

(1) Such property was received in a liquidation which was completed before June 23, 1936;

(2) Such liquidation constituted a complete liquidation within the meaning of section 112 (b) (6) of the Revenue Act of 1934, as added by the Revenue Act of 1935;

(3) No gain or loss would have been recognized under section 112 (b) (6) of the Revenue Act of 1934, as amended, upon the receipt of such property; and

(4) The recipient corporation (within 180 days after the enactment of the Revenue Act of 1938) elects under these regulations to have such basis apply to such property.

If such an election is made, the basis of such property received in liquidation shall be the cost or other basis (adjusted as provided in section 113) of the stock of the liquidating corporation surrendered in exchange for the property, decreased in the amount of money received and increased in the amount of gain or decreased in the amount of loss to the recipient corporation that was recognized upon the liquidation under the Revenue Act of 1936. If such property consists of more than one class of property the basis shall be allocated among the several properties (other than money) received, in the proportion that the fair market value of each such property as of the date of distribution bears to the fair market value of all such properties on that date.

(c) *Written election as to basis.*—In order to elect under section 113 (a) (15) of the Revenue Act of 1936, as amended by section 808 of the Revenue Act of 1938, to have the basis provisions of the Revenue Act of 1934, as amended, apply to property received in complete liquidation of a corporation, it is necessary that affirmative action be taken, in the manner prescribed herein, by the corporation entitled to make the election. To be effective, the election must be made with respect to all of the property received in liquidation from the liquidating corporation after December 31, 1935, and before June 23, 1936, in a taxable year of the recipient corporation beginning after December 31, 1935. Failure so to act will not be considered as an election. An election once made under these regulations is irrevocable. A corporation entitled to make the election permitted under section 113 (a) (15) of the Revenue Act of 1936, as amended, shall, within 180 days after May 28, 1938, the date of the enactment of the Revenue Act of 1938, file with the Commissioner of Internal Revenue, Washington, D. C., for the attention of the Income Tax Unit, Records Division, its written election, in duplicate, under oath, on Form 965, signifying such election. Such form shall be executed and filed in accordance with these regulations and the instructions on the form. If prior to filing of the election the recipient corporation has filed its income and excess-profits tax return for any taxable year beginning after December 31, 1935, the election shall be accompanied by an amended return for each such year or by a statement explaining in detail the adjustments to be made in the return for each such year as a result of the election.

The facts disclose that at the time of the dissolution of the Hinds Co. the then effective Revenue Act of 1934, as amended, provided that the basis of the Hinds assets in the hands of the Products Co. was the cost to the Products Co. of the stock surrendered for those assets, which was $5,387,228.68. This continued to be true through April 15, 1936, when the Products Co. and Lehn & Fink, Inc., were merged into Lysol, Inc., now Lehn & Fink Products Corporation. Thereafter, on June 26, 1936, the Revenue Act of 1936 was passed and made retroactive to January 1, 1936, and the new act changed the basis provisions, prescribing that the basis in such a situation as this should be the cost of the assets to the liquidated subsidiary. The cost of the assets involved here to the Hinds Co. was $144,811.91, or, after payment of liabilities, $68,962.52.

Congress later realized that the new provisions, retroactively applied, worked a substantial hardship on corporations which had liqui-

dated subsidiaries prior to the passage of the 1936 Act, relying on the basis provisions then in effect under the 1934 Act. To provide relief in those cases, section 808 of the Revenue Act of 1938, set out above, was passed.

The Hinds liquidation met all the requirements of section 808, and Lehn & Fink Products Corporation the survivor of the merger and petitioner here, filed a written election within the prescribed time, electing to use as its basis for the property acquired in the liquidation the cost to the Products Co. of the stock surrendered for the assets so acquired.

The Commissioner refused to give effect to the election, on the ground that petitioner was not "the recipient corporation" entitled to make the election, under the statute.

This precise question, arising under section 808 of the 1938 Act, does not seem to have received judicial attention, so far as the cases which have come to our attention disclose.

The Delaware laws relating to corporate mergers provide that "all and singular, the rights, privileges, powers and franchises of each of said corporations, and all property, real, personal and mixed, and all debts due to any of said constituent corporations in whatever account, as well for stock subscriptions as all other things in action or belonging to each of such corporations, shall be vested in the corporation resulting from or surviving such consolidation or merger, and all property, rights, privileges, powers and franchises, and all and every other interest shall be thereafter as effectually the property of the resulting or surviving corporation as they were of the several and respective constituent corporations * * *." Sec. 60, Revised Code of Delaware, ch. 65, par. 2092.

Petitioner relies on those cases which have held that a surviving corporation may prosecute on appeal from a determination of deficiency issued in the name of a constituent corporation. *Bowman Hotel Corporation* v. *Commissioner*, 24 B. T. A. 1193; *Alaska Salmon Co.* v. *Commissioner*, 39 B. T. A. 455; *Trahern Pump Co.* v. *Commissioner*, 27 B. T. A. 363; and on *Phillips* v. *Howe Films Co.* 33 Fed. (2d) 891. In this latter case a constituent corporation, later merged into the petitioner there, filed an income tax return and paid the tax. After the merger, the survivor executed in its own name a waiver extending the period of limitations within which additional taxes might be asserted against the constituent company and, within that extended time, filed a claim for a refund of taxes overpaid by the constituent corporation. The statute authorized the filing of such a waiver "by the taxpayer." The court held the waiver filed by the survivor valid.

Petitioner also cites the decisions holding that a surviving corpora-

tion may continue to deduct unamortized bond discount on bonds issued by a constituent corporation at a discount. *Western Maryland Railway Co.* v. *Commissioner*, 33 Fed. (2d) 695; *Helvering* v. *Metropolitan Edison Co.*, 306 U. S. 522; *American Gas & Electric Co.* v. *Commissioner*, 85 Fed. (2d) 527; *Illinois Power & Light Corporation*, 33 B. T. A. 1189. See also *Seaboard Airline Railway*, 256 U. S. 655.

Respondent contends that to allow petitioner to benefit from section 808 would be to defeat the broad principle of computing gains and losses for tax purposes on the basis of an annual accounting for the year's transactions; that petitioner is seeking a tax exemption, which is not to be lightly inferred, citing *Heiner* v. *Colonial Trust Co.*, 275 U. S. 232.

Respondent urges that the deduction sought by petitioner is one which Congress clearly intended to be personal to the recipient corporation, citing *Jones* v. *Noble Drilling Co.*, 135 Fed. (2d) 721, which involved a merger under Delaware laws. The constituent corporation had a dividends paid credit which was not used by it in its final return. The surviving corporation attempted to deduct as a dividends paid credit the unused credit of its constituent. The deduction was disallowed.

Respondent cites also *Marion-Reserve Power Co.*, 1 T. C. 513, where we held a new corporation resulting from the consolidation of four constituent corporations was not entitled to deduct unused dividends paid carry-over credits for dividends paid by one of its predecessors, and *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, where a successor corporation was held not entitled to deduct carry-over net losses of the predecessors, and *Pennsylvania Co. for Insurances on Lives and Granting Annuities* v. *Commissioner*, 75 Fed. (2d) 719, where a survivor corporation was denied the right to deduct a loss sustained by a constituent corporation prior to the merger.

The two lines of cases relied on by the parties are clearly distinguishable from each other. The cases cited by petitioner allow a surviving corporation to claim or perfect on behalf of a constituent some legal right or benefit to which that constituent would have been entitled if it had continued its separate existence. Those cited by respondent deny a survivor the right to claim for itself a deduction on account of dividends paid or losses sustained by a constituent prior to the merger.

The petitioner's citations seem more relevant to the situation before us. The petitioner does not seek a deduction from its own income for dividends paid or losses sustained prior to the merger by a constituent, but seeks to claim the benefit of a remedial statute for the constituent corporation to all of whose legal rights, powers, and privileges it is the legal successor.

Section 808, which is the one before us for construction, is remedial in purpose and should therefore be liberally construed to effect its intended result.

The argument made by respondent for a strict construction of the statute, because petitioner claims a deduction, is unsound. The deduction for depreciation to which petitioner is entitled is not claimed under section 808, but is provided for by a wholly different section of the statute. Sec. 23 (1). This deduction for depreciation of property owned by it for the period during which it was so owned, it is entitled to in any event, without respect to its attempted election under section 808, which can affect only the amount of that deduction, and in a derivative manner.

If, as we have seen, a survivor may file a claim for refund of taxes paid by a constituent, and may file a waiver of the statute of limitations involving the assessment of taxes against a constituent, and may file and prosecute an appeal from a deficiency notice addressed to the constituent, and take other such steps to enforce and protect rights of constituent corporations, although the statute authorizing all these actions provides that they are to be taken by "the taxpayer," there seems to be no reason why a survivor may not also file the election to secure for its constituent the more favorable basis, provided by section 808, to be filed by "the recipient corporation."

If the right of election provided by section 808 is not available to petitioner as the survivor of the merger, the remedial purpose of the statute will be defeated in this case, which is of the precise type which Congress intended to relieve. The failure will be due solely to the later merger, which also took place before and could not therefore have anticipated the passage of the 1936 Act, the retroactive application of which created the hardship. Section 808 of the 1938 Act was designed to afford to corporations which had liquidated subsidiaries in reliance on the then effective law an opportunity to avoid the retroactive impact of a later law, the provisions of which could not have been foreseen. In the instant case, not only had the liquidation been irrevocably completed before the passage of the Act which resulted in the hardship, but the merger was equally final and accomplished. The 1938 Act was designed to relieve the hardship resulting from the liquidation under these circumstances, and we think that purpose should be effectuated. The statute can reasonably and should fairly be interpreted to extend the relief to petitioner as the legal successor, by merger, of the corporation which received the property in liquidation of its subsidiary. We therefore conclude that petitioner was entitled to file the election provided for in section 808 of the Revenue Act of 1938.

We are now confronted with the valuation questions involved here. Section 808 of the Revenue Act of 1938 provides that in such a liquidation as occurred here the basis of the property distributed in the hands of the corporation receiving it shall be the basis prescribed by the Revenue Act of 1934, upon the filing of an election to have such basis apply. This election, as we have seen, was effectively filed in this instance.

The 1934 Act, at section 113 (a) (6), prescribed that the basis of property received in a tax-free exchange "shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer * * *."

Article 113 (a) (15–1 (b) of Regulations 94, as amended by T. D. 4815, C. B. 1938–1, pp. 79 and 80, contains the following provision: "If such property consists of more than one class of property, the basis shall be allocated among the several properties (other than money) received, in the proportion that the fair market value of each such property as of the date of distribution bears to the fair market value of all such properties on that date."

By these provisions, the basis in the hands of the Products Co. of the property received in liquidation of A. S. Hinds Co. was the basis of the stock surrendered in exchange therefor, decreased by the amount of money received by the Products Co. The basis of the stock so surrendered was its cost to the Products Co., which was $5,387,228.68. This amount, decreased by the amount of money distributed, is to be allocated among the several properties (other than money) distributed, according to the statute and regulation, in the proportion which the fair market value of each such property bears to the fair market value of all such property, as of the date of the liquidation. It is for the purpose of applying this allocation formula that it becomes necessary to determine the fair market value of the several properties on the date of distribution.

The parties have stipulated, and we have found, that the fair market value of the machinery and equipment at the Bloomfield, New Jersey, plant was $62,194.90 on the valuation date; that of the foreign machinery and equipment, $20,000; and that the stock of A. S. Hinds, A. G. (Germany) was valueless on that date.

There remains for consideration the proper treatment of an account receivable in the amount of $17,551.41; the fair market value, as of January 29, 1936, of the trade names, trade-marks, secret processes, secret formulae and good will of A. S. Hinds Co.; the fair market value of the stock of A. S. Hinds Canada (Ltd.) and of A. S. Hinds Ltd., London.

Concerning the account receivable of $17,551.41, owed by Lehn & Fink., Inc., to A. S. Hinds Co., it is petitioner's contention that, since Lehn & Fink, Inc., was a solvent corporation, with the highest obtainable commercial credit rating, and since the account was payable on demand and could have been received at any moment A. S. Hinds Co. desired, it was the same as money in the bank and should be considered as "money" distributed on final liquidation for the present purpose. Petitioner points out that in order to have secured an AAA 1 rating in the credit field, Lehn & Fink, Inc., must have had a net worth of one million dollars or more, a clear record for discounting or anticipating all bills, and its officers must have had a clear personal record. These facts are undisputed, and, we have no doubt, are indisputable. The question is whether, as a matter of law, such an account receivable may be treated as "money" in this regard. Petitioner cites no authority for its position. We think it clear that, in both legal theory and business practice, accounts receivable are generally treated as property or assets other than money. As such property, they are properly subject to valuation, and all facts relating to their ready collectibility are pertinent and material to the question of that value. But we do not believe the degree of collectibility affects the nature of the item as distinguished from the value of the item. In other words, the ease with which an account receivable may be realized in money does not, we think, convert it into money. The same reasoning might be applied to any property which is readily salable or otherwise convertible into money. In the absence of authority to the contrary, we hold the account receivable to be property other than money. It is possible that its fair market value may have been somewhat less than face value, in order to allow for a reasonable discount, but petitioner offered no evidence on that point, and, in fact, makes no such contention. On the contrary, its counsel conceded in his opening statement that it was worth its full face value. Under the circumstances, therefore, we hold it was worth face value of $17,551.41.

With regard to the other valuation questions presented in this proceeding, we have carefully examined all of the voluminous data presented by the record herein and have considered all of the testimony, both factual and opinion. We have also studied the briefs filed by counsel and have sought to give the proper weight to all of the factors involved in a determination of value.

Having considered all of the pertinent facts, a large portion of which is set out in our findings, and having studied with care the opinion testimony and arguments of counsel, we have arrived at our ultimate conclusions as to the fair market value as of January 29, 1936,

of the trade-marks, trade names, secret processes and formulas, and good will of A. S. Hinds Co.; the fair market value as of January 29, 1936, of the stock of A. S. Hinds Ltd., London; and the fair market value as of January 29, 1936, of the stock of A. S. Hinds (Canada) Ltd. These conclusions are stated in our findings.

*Decision will be entered under Rule 50.*