BUSH TERMINAL BUILDINGS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24012.   Promulgated September 28, 1951.

*Holt S. McKinney, Esq.*, for the petitioner.
*Scott A. Dahlquist, Esq.*, for the respondent.

488

**OPINION.**

LeMire, *Judge:* We will first consider the question of res judicata. In the prior proceeding, *Bush Terminal Buildings Co.*, 7 T. C. 793, involving the year 1940, we found certain facts either identical with or closely related to facts upon which some of the issues now before us must be decided. For instance, as to the bond purchases, we found that petitioner was not in an unsound financial condition in 1940, and therefore realized taxable gain on the purchase of its bonds at less than par value in that year. We now have the same question for 1941. As to reorganization expenses, we determined in the prior proceeding that certain expenses incurred in 1940, in connection with the 77–B reorganization, were capital expenditures not deductible in that year

as business expenses. The same question is presented in this proceeding as to 1941 expenditures. In the prior proceeding we sustained the Commissioner's determination of the amount of the 1939 net operating loss carry-over to 1940, disallowing the petitioner's claim to an additional deduction in 1939 on account of certain interest payments. We now have the question of the amount of 1939, as well as 1940, net loss carry-over available for 1941.

First, petitioner argues that the doctrine of res judicata, or collateral estoppel, does not apply here because we have before us a different tax year from the one previously under consideration.

### *Gain on Bond Purchases*

The first issue on the merits is whether petitioner realized taxable gain on the purchase of its own bonds for less than par value in 1941. That question depends upon the facts as they existed in 1941. The bond purchases under consideration in the prior case were those made in 1940. Since the conditions then existing may have changed and, in in fact, did change in 1941, the doctrine of res judicata does not apply.

In holding that the bond purchases in 1940 resulted in taxable gain we made a careful study of petitioner's financial situation and concluded that the evidence did not show that petitioner was "in an unsound financial condition," within the meaning of section 22 (b) (9) of the Internal Revenue Code, as amended by section 215 of the Revenue Act of 1939. We pointed out that although the petitioner was then undergoing a 77–B reorganization under the Bankruptcy Act it was not insolvent; that it had a net worth in 1940 in excess of $9,000,000 and a gross income of two and a quarter million; that the real estate securing its outstanding bonds of $7,000,000 at the end of 1940 had a value in excess of $12,000,000; that there were other assets of a value of more than $3,800,000, and that petitioner's purchases of bonds in 1940 far exceeded its current obligations under the sinking fund agreement.

The evidence now shows that petitioner was in an even better financial condition in 1941 than in 1940. Its surplus as shown in its balance sheets increased from $1,399,110.66 in 1940 to $1,806,871.04 in 1941; its funded indebtedness was reduced from $6,880,000 in 1940 to $6,131,000 on December 31, 1941; and the average price at which petitioner purchased its bonds increased from approximately sixty-four per cent of the face value in 1940 to approximately seventy-five per cent of the face value in 1941.

Thus, on the evidence, we must conclude on authority of our prior decision for 1940 that the petitioner was not in an unsound financial condition in 1941. Our prior decision was not appealed and has now become final.

Petitioner has raised a new question in this proceeding upon which it seems to place considerable reliance. It claims that there was a certification to the Commissioner by a Federal agency having regulatory powers over petitioner that petitioner was in an unsound financial condition in 1941, in compliance with section 22 (b) (9),[1] added to the Code by section 215 (a) of the Revenue Act of 1939. This claim is based on the letter which Judge Inch, of the United States District Court for the Eastern District of New York, allegedly wrote to the Commissioner of Internal Revenue regarding petitioner's financial condition in 1941. This letter is quoted in full in our findings of fact. A copy of the letter, duly signed by Judge Inch and certified by the clerk of his court, was offered in evidence by counsel for the petitioner but was strenuously objected to by counsel for the respondent. Respondent's chief objection to the admission of the letter was based on the "best evidence" rule and on the fact that petitioner's counsel did not make a demand on the respondent to procure the original of the letter until the hearing on September 19, 1950, whereas, the letter, although dated September 12, 1950, was not mailed until September 16, and could not have been received by the respondent in Washington until September 18.

The letter was identified by petitioner's assistant treasurer, who testified it was given to him by petitioner's counsel and that he mailed the original to the Commissioner of Internal Revenue, Washington, D. C., by registered mail. The witness further testified that he had no authorization from the writer of the letter to mail it. Petitioner's attorney stated at the hearing that he got the letter on the 12th or 13th, had it certified by the clerk of the court on September 15, and gave it to the assistant treasurer for mailing to the Commis-

---

[1] SEC. 22 (b) (9), I. R. C.:

(9) INCOME FROM DISCHARGE OF INDEBTEDNESS.—In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if—

\* \* \* \* \* \* \*

(B) it is certified to the Commissioner by any Federal agency authorized to make loans on behalf of the United States to such corporation or by any Federal agency authorized to exercise regulatory power over such corporation.

that at the time of such discharge the taxpayer was in an unsound financial condition, and if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113 (b) (3) then in effect. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. As used in this paragraph the term "security" means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation, in existence on June 1, 1939. This paragraph shall not apply to any discharge occurring before the date of the enactment of the Revenue Act of 1939, or in a taxable year beginning after December 31, 1942.

sioner on September 16. The letter was received in evidence. That is not to say, however, that we regard the letter as foreclosing the issue against the respondent. We do not believe that the letter meets the statutory requirement for a certification to the Commissioner of petitioner's unsound financial condition by a "Federal agency authorized to exercise regulatory power over such corporation." Sec. 22 (b) (9) (B), I. R. C.

In the first place, there is a serious doubt, we think, that the term "Federal agency," as used in the statute, was intended to include the Federal judiciary. See report of Senate Finance Committee (1939–2 C. B., p. 527), set out in part below:

> Many corporations (such as railroads) that will endeavor to bring themselves under the provisions of the new paragraph (9) are corporations that have had, and continue to have, considerable dealings with the Federal Government, where the financial condition of such corporations is an important factor in such dealings. It seems desirable to utilize information obtained by various agencies of the Government and thus relieve the Commissioner of Internal Revenue from the necessity of making an independent finding in each case as to the financial condition of the corporate taxpayer. To carry out this policy, a committee amendment to this section provides that a corporation may obtain the benefits of the new paragraph (9) if it can establish that it was in an unsound financial condition at the time of the discharge of its indebtedness, by the presentation of a certification to the Commissioner by any Federal agency which is authorized to make loans on behalf of the United States to such corporation, or by any Federal agency authorized to exercise regulatory power over such corporation.

Although Federal courts may in a literal sense fall under the classification of agencies of the Government they are not commonly referred to as such. As usually employed the term agency means an agency in the administrative branch of the Government, such as the Interstate Commerce Commission, the Reconstruction Finance Corporation, and the Securities and Exchange Commission. The statute refers to Federal agencies "authorized to exercise regulatory power over such corporation." At the time the letter in question was written the United States District Court was not authorized to exercise regulatory power over the petitioner. The bankruptcy proceeding under which it may have exercised such powers had been terminated approximately five years previously. In the meantime, this Court had ruled that petitioner was not in an unsound financial condition in 1940.

The time for the petitioner to have made or to have procured a certification to the Commissioner of its unsound financial condition was when it filed its return, or, at the latest, when the matter was subject to administrative disposition by the Commissioner. This was clearly the intent of the statute, its purpose being to relieve the Commissioner of the burden of making an independent investigation of the financial condition of taxpayers seeking to bring themselves under the section. See report of Senate Finance Committee, *supra*. The taxpayer took

no such steps until· long after the Commissioner had closed his action on the 1941 return and on the eve of the trial before this Court. The petitioner, or its attorney, must have been fully aware that the letter which the United States District Court was asked to provide would, if serving the purpose for which it was intended, stand as a complete contradiction of the determination already made by this Court that petitioner was not in an unsound financial condition in 1940. The petitioner was under the jurisdiction of that court in both years and its financial condition in 1941 had improved over 1940.

In view of our prior determination that petitioner was not in an unsound financial condition in 1940, and the fact that it was in a still better financial condition in 1941, we must conclude that it was not in an unsound financial condition in 1941 and that it is not entitled to relief from tax under section 22 (b) (9) upon the gain which it derived from the purchase of its bonds in 1941.

The petitioner further contends that the amendments made to section 22 (b) (9) of the Code by section 114 of the Revenue Act of 1942, removing the "unsound financial condition" as a requirement for exclusion of the gain from the discharge of such indebtedness, are retroactive to 1940 and 1941. This identical question was considered in the prior proceeding and was decided against petitioner's contention. We said in that case:

We think section 29.22 (b) (9)–1 of Regulations 111 correctly interpreted the amendments to apply only to taxable years beginning after December 31, 1941.

It is our conclusion, therefore, that that provision of section 22 (b) (9) of the code, before the 1942 amendment, required petitioner to establish the unsoundness of its financial condition in 1940.

### Reorganization Expenses

Petitioner claims the deduction of $26,426.13 which it charged to a reserve for reorganization expenses in connection with the 77–B reorganization. In the prior proceeding we disallowed deductions for 1939 and 1940 additions made to this same reserve for the same type of expenditures. We said that the expenses of reorganization were capital expenditures and were not deductible as business expenses, citing a number of authorities for that proposition. Following our ruling in that case we must disallow the similar deductions now claimed for 1941.

### Interest on Deferred Sinking Fund Obligations

By an amendment to its petition, petitioner claims a deduction of $119,812.50 as interest paid on its deferred sinking fund installments. Respondent contends that no such interest was paid and therefore none is deductible.

Under the terms of the reorganization agreement, and the supplemental mortgage, interest was payable at the rate of 5 per cent on

petitioner's deferred sinking fund installments. This interest was payable to the trustee along with the principal amount due on the sinking fund installments. It was also provided in the reorganization and mortgage agreements that petitioner might at its option deliver its own bonds to the trustee in payment of its sinking fund installments and receive credit therefor equal to the cost of such bonds. During 1941 petitioner turned in to the trustee bonds which it had purchased at a discount at a cost of $911,812.50 and received credit for that amount on its sinking fund obligations. The trustee in its accounts credited $779,198.83 of that amount to principal and $132,-613.67 to interest. The bonds were canceled by the trustee.

Petitioner does not contend that it paid any interest to the bondholders from whom it purchased the bonds, and the facts do not show that it did. Cf. *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216; *Harold M. Blossom*, 38 B. T. A. 1136. Petitioner claims that it paid the interest by turning over the bonds to the trustee. This might be said to raise the question as to whether petitioner's obligation to pay the trustee interest on the deferred sinking fund installments was an "indebtedness" within the meaning of section 23 (b), Internal Revenue Code. It was with this question in mind that the parties have stipulated, as set out in paragraph (6) of the stipulation above, that they did not intend to stipulate that the term "interest," as used in connection with the sinking fund installments, means "interest on indebtedness within the meaning of Sec. 23 (b) of the Internal Revenue Code."

That question, we think, need not be decided here. In determining petitioner's gain on the purchase of the bonds at less than the issue price the respondent allowed as cost the full amount which petitioner paid for them. If petitioner is now permitted to treat a part of that cost as interest paid, there must be a corresponding reduction in the cost of the bonds to petitioner and a like increase in petitioner's gain on their purchase. Thus, in the end, petitioner's tax liability would not be affected.

### Net Loss Carry-Over

The adjustments sought in the net loss carry-over from 1939 and 1940 involve the same questions of the deduction of reorganization expenses and gain on the purchase of bonds already decided adversely to petitioner's contention both in the prior proceeding and in connection with the year now before us. Accordingly, no adjustment of the net loss carry-over as determined by the respondent is required except as may be effected by the above stipulation.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

TURNER and RAUM, *JJ.*, concur in the result.