THE DENVER & SALT LAKE RAILWAY COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY (AS TRANSFEREE), PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43783, 43784, 43785, 43786. Filed July 20, 1955.

*Stanley Worth, Esq.*, and *Jules G. Korner, III, Esq.*, for the petitioners.

*Everett E. Smith, Esq.*, for the respondent.

OPINION.

Van Fossan, *Judge:* The first question is whether petitioner's bases in certain properties for determining gain or loss on their destruction by fire are to be reduced by amounts representing depreciation allegedly accrued during the period 1908 to 1943 as to the water tank, and from 1909 to 1943 as to the tunnel lining, taxpayer having changed from retirement accounting to depreciation accounting as of January 1, 1943. The portions of the statutes claimed to be applicable are found in sections 23 (i) and 113 (b), Internal Revenue Code of 1939.[1]

Briefly summarized, the pertinent facts are these. Following an order by the Interstate Commerce Commission for petitioner to change from the retirement method of accounting, which method it had tra-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(i) BASIS FOR DETERMINING LOSS.—The basis for determining the amount of deduction for losses sustained, to be allowed under subsection (e) or (f), and for bad debts, to be allowed under subsection (k), shall be the adjusted basis provided in section 113 (b) for determining the loss from the sale or other disposition of property.

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \* \*

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—

(i) allowed as deductions in computing net income under this chapter or prior income tax laws, and

(ii) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this chapter (other than subchapter E), subchapter E of chapter 2, or prior income, war-profits, or excess-profits tax laws, but not less than the amount allowable under this chapter or prior income tax laws.\* \* \*

(C) in respect of any period prior to March 1, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion. to the extent sustained;

ditionally used with respect to its depreciable roadway property, to the depreciation method, petitioner applied to respondent for permission to make such change for tax purposes. Respondent granted such request, effective January 1, 1943, subject to petitioner's irrevocable acceptance of certain terms and conditions dealing with depreciation set forth in his so-called terms letter, the germane portions of which are set forth in the above findings. Thereafter, certain items of petitioner's roadway property, i. e., a wooden tunnel lining and a water tower, were destroyed by fire in 1943 and 1946, respectively. In each instance there was no salvage and petitioner collected insurance on account of the casualty. Petitioner claims to have suffered a deductible loss on each casualty, whereas respondent has determined, and here contends, that petitioner realized taxable gains thereon. The treatment accorded to depreciable property under retirement accounting and the exact procedure employed in making the respective computations are set out in our Findings of Fact.

Various phases of the general question of retirement accounting·by railroads and the difficulties that were encountered when the railroads changed to depreciation accounting have been before the courts.[2] We know of no case, however, which involved as a fact or a factor the narrow question presently before us, which is, the effect and applicability of what is here called the terms letter, in determining gain or loss on property destroyed by fire. It is agreed that the terms letter embodies the entire contract or agreement between the railroad and the Commissioner in the matter of depreciation accounting, and, as we understand counsel for the parties, a decision on this question is dispositive of the entire issue.

The respondent contends that, by necessary implication, the terms letter authorizes his action in deducting depreciation from petitioner's cost basis and points to section 113 (b) (1) (B) and (C). Petitioner maintains that the provisions and meaning of the terms letter are clear and that the action of the respondent cannot be justified by any provision of the agreement. We agree with the petitioner.

The terms letter does not deal with gain or loss. It refers exclusively to the matter of depreciation. Such an important matter as the calculation of gain or loss, had the parties intended its inclusion, would not have been left to implication or interpretation. It would have been made the subject of specific provision. The terms letter seems clear and unambiguous. To hold as respondent suggests, would extend the effect of the agreement far beyond its apparent scope.

[2] *Los Angeles & Salt Lake Railroad Co.*, 4 T. C. 634; *Chicago & North Western Railway Co.* v. *Commissioner*, 114 Fed. (2d) 882, affirming 39 B. T. A. 661, certiorari denied 312 U. S. 692; *Commissioner* v. *Union Pacific Railroad Co.*, 188 F. 2d 950, 952; *Boston & M. R. R.* v. *Commissioner*, 206 F. 2d 617, affirming in part 16 T. C. 1517; *Kansas City Public Service Co.* v. *United States*, 100 F. Supp. 105; and *Akron, Canton & Youngstown Railroad Co.*, 22 T. C. 648.

Petitioner has adjusted its depreciation practice to conform to the straight-line method, within the limitations set by the respondent and does not here challenge respondent's action in respect to the period after December 31, 1942. It has fixed the cost basis of depreciable property at an agreed figure, has set up the 30 per cent reserve with its arbitrary write-down of book cost, and has, so far as we are informed, kept strictly within the provisions and spirit of the agreement embraced in the terms letter.

As to respondent's reliance on section 113 (b) (1) (B) and (C), in the *Akron and Canton* case this Court considered many phases of the basic question (except the applicability of the terms letter above disposed of and not there present) holding on the authority of a long line of cases that where a taxpayer changed from retirement accounting used by a predecessor corporation to depreciation accounting used by the new corporation, no adjustment to the predecessor's basis or substituted basis in petitioner's hands was proper under section 113 (b) (1) (B) and (C).

We hold that respondent erred in reducing petitioner's basis for computing gain or loss by the deduction of depreciation allegedly allowed or allowable during the period prior to January 1, 1943.

One further issue remains to be considered. Prior to the year here involved, petitioner's parent company, the Denver and Rio Grande, was undergoing a reorganization under the terms of section 77 of the Bankruptcy Act. The plan of reorganization, as adopted, proposed the merger of petitioner into the Denver and Rio Grande, provided the holders of a requisite proportion of petitioner's income bonds consented thereto. Otherwise, the reorganization would proceed without the participation of petitioner. The plan to which petitioner's bondholders were asked to agree called for the surrender by them of petitioner's bonds in exchange for those of the reorganized parent. The bonds to be issued by a different obligor would have an extended maturity date and a lower rate of interest than those surrendered. Petitioner undertook, in collaboration with the reorganization committee of the Denver and Rio Grande, to poll its bondholders and to procure the requisite consent thereof. In such undertaking petitioner was successful. Petitioner incurred and paid expenses in connection therewith in the amount of $11,366.21 during 1946, and here seeks our approval of the deduction thereof in 1946.

Respondent disallowed such deduction and here argues on brief that the expenditures in controversy were not ordinary and necessary expenses of doing business; that they were reorganization expenses, and that, as such, they are neither deductible nor amortizable by petitioner. It is petitioner's contention that at the time the polling of bondholders took place in 1946, it was not actually a party to any reorganization

and that such polling and the expenses incident thereto, were a necessary prerequisite to its participation therein. Petitioner further argues that such expenses were incurred in connection with a modification with respect to petitioner's outstanding bonds, which modification was advantageous to petitioner and that they are, therefore, deductible in full in 1946 or beginning in that year are amortizable over the life of the bonds, as extended. We disagree with petitioner on this point.

It is true that petitioner was not technically a party to a reorganization at the time it incurred the disputed expenses. It is also true that such amounts might possibly be said to have been expended to acquire a modification in petitioner's outstanding bond issue, which was advantageous to it. Nevertheless, the fact remains that petitioner made such expenditures in anticipation of and as an integral part of its proposed merger with the Denver and Rio Grande. Furthermore, what advantages there were accruing to petitioner, in the modification sought by it, were contingent upon and did not accrue to it unless and until the actual merger occurred. We, therefore, are of the opinion that being so inextricably tied in with the proposed plan of reorganization and with petitioner's participation therein, the expenditures in question must necessarily be considered as part of the expenses thereof. This being true, they represent capital expenditures and as such, are not deductible. *Bush Terminal Buildings Co.*, 17 T. C. 485, affd. 204 F. 2d 575, following *Bush Terminal Buildings Co.*, 7 T. C. 793. See also *Motion Picture Capital Corp.* v. *Commissioner*, 80 F. 2d 872, affirming 32 B. T. A. 339. *Gt. W. Power Co.* v. *Commissioner*, 297 U. S. 543, and other cases of like import relied upon by petitioner are distinguishable on their facts and the rationale thereof is not considered applicable. Respondent's determination is therefore approved.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The statute contemplates only one basis for all purposes, including gain and loss, and I think the parties had no other thought in mind when they agreed, as a condition to the change in accounting method for depreciation, that the basis should be reduced by a reserve equal to 30 per cent of cost. That was a reasonable thing for them to do in view of the fact that the deductions under the retirement method had approximated the deductions which would have been allowable under the straight-line depreciation method. The 30 per cent should be taken into account in computing gain or loss when the two properties burned.

TURNER, LEMIRE, and RAUM, *JJ.*, agree with this dissent.