UNION PACIFIC RAILROAD COMPANY, PETITIONER, ET AL.,* *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 106473, 111869, 15992, 15994, 15995, 15996, 15997.

Promulgated March 13, 1950.

*Proceedings of the following petitioners are consolidated herewith: The St. Joseph and Grand Island Railway Company; Oregon Short Line Railroad Company; Oregon-Washington Railroad & Navigation Company; and Los Angeles & Salt Lake Railroad Company.

402

*Joseph F. Mann, Esq., Frank E. Barnett, Esq.*, and *Arthur Z. Gray, Esq.*, for the petitioners.

*Walt Mandry, Esq.*, for the respondent.

### OPINION.

JOHNSON, *Judge*: The first issue relates to interest due Union Pacific on certain general consolidated 4½ per cent bonds of Lehigh Valley Railroad Co. which it owned during the taxable years 1938 and 1939. Under a plan and agreement of the latter company, dated August 25, 1938, and approved by the District Court on August 7, 1940, provision was made for the extension of certain interest maturities on its bonds, including the bonds owned by Union Pacific. As to the general consolidated bonds, the plan provided that the semiannual interest due November 1, 1938, and for each period up to

November 1, 1940, would be paid to the extent of 25 per cent and the remaining 75 per cent would be paid within five years of the respective due dates. No part of the interest was canceled. In accordance with the provisions of the plan, 25 per cent of the interest on the bonds was paid on the original due dates and the remaining 75 per cent of the deferred interest was paid to Union Pacific during the years 1942, 1943, 1944, and 1945. Union Pacific, in its returns for the years 1938 and 1939 reported only the interest which it had actually received. It kept its books and filed its returns on the accrual basis.

The respondent added to the income reported by petitioner for each year the balance of the full interest due on the bonds for each year. He contends that where, as here, the obligation to pay the full amount of the interest was absolute and there was a reasonable expectancy of receipt of all the interest, the deferment in payment of a portion of such interest does not serve to postpone the accrual thereof.

The petitioner contends that the bond interest not actually paid by Lehigh Valley Railroad Co. in 1938 and 1939 was properly not accrued as income for those years. It urges that events in the taxable years indicated that, because of business difficulties of the obligor, payment of the deferred interest might never be made.

Where a taxpayer keeps accounts and makes returns on the accrual basis, it is the right to receive and not the actual receipt that determines the inclusion of an amount in gross income. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182; *Continental Tie & Lumber Co.* v. *United States*, 286 U. S. 290; *Lucas* v. *American Code Co.*, 280 U. S. 445; and *American National Co.* v. *United States*, 274 U. S. 99. But where there exists reasonable grounds for believing, at the time the right to receive income becomes fixed, that such income will never be received, it need not be included in gross income. *O'Sullivan Rubber Co.*, 42 B. T. A. 721; affd., 120 Fed. (2d) 845.

The evidence produced indicates that the Lehigh Valley Railroad Co.'s operations resulted in deficits for several years prior to 1938, and that it failed to earn its fixed charges in each of the years 1931 to 1937, inclusive, except 1936, and for the first six months of 1938, but the plan stated that it was "the belief of the System's management, shared by insurance companies and savings banks holding large amounts of the System bonds and by its bank creditors, that the present situation may be temporary." Its gross operating revenues showed a gradual increase from $38,177,450 in 1933, to $39,866,526 in 1934, to $40,641,557 in 1935, to $49,156,379 in 1936; a slight decline to $48,618,849 in 1937; and for the first six months of 1938 amounted to $19,997,882. There is nothing in the record to indicate that it was insolvent during the years 1938 and 1939. An examination of the evidence presented does not convince us that there was reasonable ground in 1938 and 1939 for believing that the deferred interest on the bonds owned by Union

Pacific would not be paid, and it was in fact paid during the years 1942, 1943, 1944, and 1945. We hold that the respondent correctly determined that the deferred interest was accruable by petitioner in the years 1938 and 1939 when its right to receive it became fixed.

The second issue relates to the proper basis to be used in computing the gain or loss resulting to Union Pacific as the result of the sale in 1941 of certain B. & O. R. R. bonds.

Prior to 1930 Union Pacific acquired B. & O. bonds, designated as refunding and general mortgage 5 per cent bonds, series A, Southwestern Division first mortgage 5 per cent bonds, convertible 4½ per cent bonds, and first mortgage 5 per cent gold bonds. It sold in 1941 one bond of each of the foregoing issues and in its return for that year claimed a capital loss. In determining such loss it used as the basis for each bond the cost of the bond when acquired. The respondent disallowed the claimed loss and determined a capital gain on the ground that the modification in the terms of the bonds in 1940 resulted in a taxable exchange in that year, and, therefore, the proper basis for such bonds was their fair market value at the date of exchange, adjusted for interest accrued to the date of exchange and subsequently received by Union Pacific.

The narrow question is whether the modification of the terms of the B. & O. bonds resulted in a taxable exchange to the holders thereof. The respondent contends that the modification of the terms of the bonds was so material as to amount to the issue of new securities, giving rise to taxable gain or deductible loss to Union Pacific when such changes were made, and that the transaction entered into pursuant to the plan of B. & O. for "Modification of Interest Charges and Maturities" is not a "recapitalization" within the meaning of section 112 (g) (1) (E) of the Internal Revenue Code and hence, not within the nonrecognition provisions of section 112 (b) (3) of the code.

On brief the respondent recognizes that the decisions in *Commissioner* v. *Neustadt's Trust*, 131 Fed. (2d) 528, affirming 43 B. T. A. 848, and *Mutual Fire, Marine & Inland Insurance Co.*, 12 T. C. 1057, are authority for the petitioner's contention that the B. & O. plan of August 15, 1938, resulted in a recapitalization, and hence a reorganization within the meaning of section 112 (g), and that the alterations made in 1940 pursuant thereto in the B. & O. bonds owned by Union Pacific amounted to an exchange in which no gain or loss was recognized. Upon the authority of the cited cases, we hold that the basis for gain or loss of the B. & O. bonds sold by petitioner in 1941 is cost.

The third issue is whether or not the petitioners, who use the retirement method in respect of their ways and structures, are required to make an adjustment under section 113 (b) (1) (C) of the Revenue Acts of 1934, 1936, and 1938 and the Internal Revenue Code, respec-

tively,[1] with respect to depreciation sustained prior to March 1, 1913, on individual units of ways and structures retired in a given year which had been acquired prior to March 1, 1913.

The respondent contends that authority for the deductions claimed by petitioners must be found in the statute and that, under the specific language of the statute, an adjustment is required for depreciation sustained prior to March 1, 1913, with respect to assets acquired prior to that date.

The petitioners concede that section 113 provides adjustments "for expenditures, receipts, losses, or other items, properly chargeable to capital account" in subsection (b) (1) (A), and "in respect of any period prior to March 1, 1913, for exhaustion, wear and tear, obsolescence, * * * to the extent sustained" in subsection (b) (1) (C). They contend, however, that under the provisions of the statute these adjustments are to be made only when they constitute "proper" adjustments, and they urge that it is not proper for a taxpayer employing the retirement method of accounting to make either the "upward" adjustment specified in subsection (b) (1) (A) or the "downward" adjustment specified in subsection (b) (1) (C).

In *Los Angeles & Salt Lake Railroad Co.*, 4 T. C. 634 (appeal dismissed, C. C. A. 2, May 27, 1946), where a similar question was presented by the taxpayer, one of the petitioners herein, we held that it was not required to adjust its ledger "cost" to eliminate depreciation prior to 1913.

The respondent on brief attempts to distinguish the instant proceedings from the cited case on the ground that therein the parties stipulated that the amounts deducted represented the "cost" of the assets retired, reduced only by the value of the salvage recovered. He urges that in the instant case there is no such stipulated fact; that the petitioners admit that the amounts which they deducted in their returns

---

[1] The following pertinent language of sections 113 (b) and 114 (a) was unaltered from 1934 through 1941:

"SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

"(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

"(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"(C) in respect of any period to March 1, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained;"

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

"(a) BASIS FOR DEPRECIATION.—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the adjusted basis provided in section 113 (b) for the purpose of determining the gain upon the sale or other disposition of such property."

represent the "adjusted basis" of the retired assets except for depreciation sustained prior to March 1, 1913; and that, in view of this admission, the adjustment for depreciation sustained prior to March 1, 1913, is proper, since the admission as to the "adjusted basis" indicates that adjustment has been made for "expenditures, receipts, losses or other items properly chargeable to capital account."

We are unable to agree with the respondent. The petitioners, at all times material herein, used the retirement method of accounting in respect of their ways and structures and kept their accounts in accordance with this method. This accounting method has been judicially recognized in a number of cases, *Central Railroad Co. of New Jersey*, 35 B. T. A. 501, 503 (appeal dismissed C. C. A. 3); *Chicago & Northwestern Railway Co.*, 39 B. T. A. 661; affd., 114 Fed. (2d) 882, 887; certiorari denied, 312 U. S. 692; *Cincinnati Union Terminal Co.*, 44 B. T. A. 905; *Los Angeles & Salt Lake Railroad Co.*, *supra*, and has been recognized by the respondent in Bureau of Internal Revenue Bulletin F (revised January 1931, effective in 1934) and in the January 1942 revision of that bulletin.

The obvious purpose of the provisions of section 113 (b) in so far as they relate to March 1, 1913, adjustments, was, as stated in *Los Angeles & Salt Lake Railroad Co.*, *supra*, to arrive at the amount of investment incorporated in the property on that date. They provide that "proper" adjustment in respect to property "whenever acquired" be made "for expenditures, receipts, losses, or other items, properly chargeable to capital account" (subsection (b) (1) (A)), and for pre-1913 depreciation sustained (subsection (b) (1) (C)). Under systems of accounting where the cost of every item having a life of more than one year is charged to capital account and depreciation is taken on a straight line basis, the figures necessary to make the foregoing adjustments and to arrive at the amount of investment in property as of March 1, 1913, are readily ascertainable. But under the railroad retirement system of accounting certain expenditures for maintenance, including restorations and renewals, which under other systems would be capitalized, are charged to operating costs. The justification for this system, as stated by the Circuit Court of Appeals for the Fourth Circuit in *Southern Railway Co.* v. *Commissioner*, 74 Fed. (2d) 887, 890, is that:

\* \* \* It would be inconvenient, if not impractical, in railroad accounting to charge every item having a life of more than one year to capital account and allow depreciation on it as a deductible item of expense; and in a great business where thousands of similar replacement or repair items are involved nothing would be gained by such a system of accounting, since, on the law of averages, expenditures for such items during a given year would substantially balance the depreciation for that year. \* \* \*

The petitioners have stipulated that the amounts taken as deductions in their returns for each of the taxable years on account of

retirements of ways and structures acquired prior to March 1, 1913, are the aggregate adjusted basis of the individual units of property retired in each year, except for pre-1913 depreciation, which the respondent determined was sustained and which petitioners do not dispute. The respondent construes this stipulation of the petitioners as to the "adjusted basis" to mean that for income tax purposes the amounts deducted embraced the subsection (A) "upward" adjustments, and therefore the compensating subsection (C) "downward" adjustments should be made. Such a construction ignores the agreed fact that petitioners kept their accounts in accordance with the railroad retirement method of accounting. Under this accounting method the amount deducted when a unit of property is retired is the amount carried in the railroad's accounts as the "ledger value" (less salvage) of that unit upon its retirement,[2] which amount is the equivalent of its "adjusted basis," and "ledger value" does not include expenditures for renewals and replacements charged to operating expenses prior to March 1, 1913.

This method of accounting, as we pointed out in the *Los Angeles* case, is not "capable of producing a figure which will fairly reflect the March 1, 1913, investment as to both positive and negative figures, and we do not regard it as proper to make an adjustment in one direction while recognizing the impossibility of others of a compensating character." We therefore hold, as we did in that case, that an adjustment for pre-1913 depreciation would be inconsistent with the retirement system and is not "proper." The respondent erred in reducing the amount of the deductions taken by petitioners in their returns for the years 1934 to 1939, inclusive, and 1941 by depreciation sustained prior to March 1, 1913.

Inasmuch as our holding on the pre-1913 depreciation issue is for the petitioners, no useful purpose would be served by discussing or deciding whether or not our decision in *Los Angeles & Salt Lake Railroad Co., supra,* is *res judicata* as to the pre-1913 issue in all of the dockets herein involved.

*Decisions will be entered under Rule 50.*

---

[2] "Ledger value" is defined by section 6 of the Classification of Investment in Road and Equipment of Steam Roads prescribed by the Interstate Commerce Commission as "*   *   * the value at which the property is carried in the property investment account in the general ledger of the carrier."