THE AKRON, CANTON & YOUNGSTOWN RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 37357. Filed June 25, 1954.

*Warren E. Hacker, Esq.*, for the petitioner.
*James F. Kennedy, Jr., Esq.*, for the respondent.

650

OPINION.

HARRON, *Judge:* The Commissioner originally did not question the right of petitioner to use the straight-line depreciation method. He proceeded, in determining the deficiencies, upon the premise that petitioner had the right to use that method. He reduced the basis of the assets acquired from the predecessor corporations by 30 per cent

for "depreciation accrued" during the period February 28, 1913, to February 1, 1944. As a result, he decreased the annual deductions for depreciation. He made his determination under section 41 of the Code.

The Commissioner now regards petitioner's use of the straight-line depreciation method as involving *a change* from the retirement to the depreciation method. In his answer, he made an affirmative pleading by which he raised an alternative issue, namely, that if his determination resulting in reductions of the amounts of deductions for depreciation is held to be improper, then the petitioner is not entitled to any annual depreciation deductions, but in lieu thereof the petitioner can take only deductions which are proper under the retirement method. In other words, in the alternative, the Commissioner contends that petitioner must use the retirement method of accounting.

1. *Is petitioner obliged to use the retirement method?*

This proceeding does not involve an effort of a railroad taxpayer to change its method of accounting from the retirement method to the straight-line depreciation method, or to adopt a hybrid method of accounting. Cf. *Central Railroad Co. of New Jersey*, 35 B. T. A. 501. The petitioner, a railroad company, is a new taxable entity, a new taxpayer. *Marion-Reserve Power Co.*, 1 T. C. 513, 516. It came into existence on February 1, 1944, as the result of a merger of two old railroad companies. Our decision in *Textile Apron Co.*, 21 T. C. 147, disposes of the alternative contention of the respondent that petitioner must use the retirement method.

In *Textile Apron Co.*, *supra*, the Commissioner relied upon the point that the taxpayer was a new taxpaying entity, and he rejected the idea that because the taxpayer was formed in a tax-free reorganization an election of its predecessors to employ a certain type of accounting had a continuing effect. The Commissioner in the cited case relied upon a regulation, section 29.22 (d)–2 of Regulations 111. We sustained the Commissioner's contentions in *Textile Apron Co.*, *supra*, because the taxpayer failed to conform to the requirements of the regulation. We pointed out, also, that the taxpayer was "an entirely new and separate taxpayer," and that the fact that the taxpayer had received assets in a tax-free exchange and that the assets received retained the bases which they had in the hands of the transferor did not entitle or compel the taxpayer to employ the same accounting methods of the transferor. We pointed out, further, that the taxpayer was free to employ an entirely different method of accounting than its predecessor had employed.

The respondent takes a position here which is inconsistent with that which he took in *Textile Apron Co.*, *supra*. See the analagous

cases: *Athol Manufacturing Co.*, 22 B. T. A. 105, affd. 54 F. 2d 230; *National Bank of Commerce of Seattle*, 12 T. C. 717; *Gage Brothers & Co.*, 13 T. C. 742; *Marion-Reserve Power Co., supra.*

2. *For the purpose of computing depreciation allowances is an adjustment of predecessors' basis "proper" with respect to period after February 28, 1913, through January 31, 1944, under sections 113 (b) (2) and 113 (b) (1) ('B)?*

The question to be decided is whether an adjustment to the predecessor corporations' basis, which is the ledger cost of roadway assets apparently maintained on their books from the dates of acquisition, is a "proper adjustment" with respect to the period after February 28, 1913, through January 31, 1944, to compensate for depreciation actually sustained after February 28, 1913, the predecessor corporations having used the retirement method of accounting at all times. The period before March 1, 1913, is not involved.

The petitioner did not make any adjustment of the substituted basis for past depreciation because of its understanding that under the retirement method of accounting (which the predecessor corporations used), "although no depreciation is charged, as such, the capital accounts will as reasonably reflect the current investment in roadway properties *at any given date* as would be true if a specifically designated depreciation account were established and maintained by the 'straight-line' or some other acceptable method." (Emphasis supplied.) *Boston & Maine Railroad*, 16 T. C. 1517, 1526, reversed on other issues 206 F. 2d 617. The petitioner relies upon *Boston & Maine Railroad, supra; Union Pacific Railroad Co.*, 14 T. C. 401, reversed on other issues 188 F. 2d 950; and *Los Angeles & Salt Lake Railroad Co.*, 4 T. C. 634. The petitioner contends that it is entitled to recover the predecessor corporations' depreciable basis over the useful lives of the assets in question remaining unexpired at February 1, 1944.

Petitioner's basis for the assets is the same as in the hands of its predecessors under section 113 (a) (20), and is thus a "substituted basis" as defined in section 113 (b) (2). Section 113 (b) (2) provides, in part, as follows:

Whenever it appears that the basis of property in the hands of the taxpayer is a substituted basis, then the adjustments provided in paragraph (1) of this subsection shall be made after first making in respect of such substituted basis proper adjustments of a similar nature in respect of the period during which the property was held by the transferor * * *.

Section 113 (b) (1), referred to in section 113 (b) (2), provides that in determining adjusted basis "proper adjustment" in respect of the property shall in all cases be made for exhaustion, wear and tear, and obsolescence *"to the extent sustained,"* with respect to any period prior to March 1, 1913; and for exhaustion, wear and tear *to the*

*extent of the amount allowed as deductions under the income tax laws, but not less than the amount allowable under the income tax laws,* in respect of any period since February 28, 1913. (Emphasis added.) The pertinent parts of sections 113 (b) (1) (B) and (C), and 113 (b) (2) are quoted in the margin.[1]

What was said in *Los Angeles & Salt Lake Railroad Co., supra,* pp. 647–649, applies here. The rationale of that case followed that of *Chicago & North Western Railway Co.* v. *Commissioner,* 114 F. 2d 882, affirming 39 B. T. A. 661, certiorari denied 312 U. S. 692, and it has received approval in *Commissioner* v. *Union Pacific Railroad Co.,* 188 F. 2d 950, 952; and *Boston & M. R. R.* v. *Commissioner,* 206 F. 2d 617. The same reasoning applies here even though the question relates to the period after February 28, 1913, through January 31, 1944. See *Kansas City Public Service Co.* v. *United States,* 100 F. Supp. 105.

In considering the question we must take into account first the provisions of section 113 (b) (2). The purpose of that section is set forth in the report of the House Ways and Means Committee, H. Rept. No. 708, 72d Cong., 1st Sess. (1931), pp. 17, 18, 19, relating to the 1932 Act. See, also, 3 Mertens, Law of Federal Income Taxation, sec. 21.164, p. 609. The purpose, in substance, is that "where there is a substituted basis * * * not only the 'basis' itself, but also the adjust-

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

\* \* \* \* \* \* \*

(B) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—

.(i) allowed as deductions in computing net income under this chapter or prior income tax laws, * * *

\* \* \* \* \* \* \*

but not less than the amount allowable under this chapter or prior income tax laws * * *

\* \* \* \* \* \* \*

(C) in respect of any period prior to March 1, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained;

\* \* \* \* \* \* \*

(2) SUBSTITUTED BASIS.—The term "substituted basis" as used in this subsection means a basis determined under any provision of subsection (a) of this section or under any corresponding provision of a prior income tax law, providing that the basis shall be determined—

(A) by reference to the basis in the hands of a transferor, donor, or grantor, * * *

\* \* \* \* \* \* \*

Whenever it appears that the basis of property in the hands of the taxpayer is a substituted basis, then the adjustments provided in paragraph (1) of this subsection shall be made after first making in respect of such substituted basis proper adjustments of a similar nature in respect of the period during which the property was held by the transferor, donor, or grantor, or during which the other property was held by the person for whom the basis is to be determined. A similar rule shall be applied in the case of a series of substituted bases.

ments pertaining thereto must be continued or carried over." For purposes of section 113 (b) (2), the critical date in this case is January 31, 1944. We agree with the petitioner that on that date the total ledger cost of the acquired roadway assets on the books of the predecessor corporations, maintained apparently from the dates of acquisition, namely, $2,141,980, as reasonably reflected, under the retirement method of accounting used by the predecessor corporations throughout the existence of each, the current investment in the roadway assets which the petitioner acquired as would have been true if specifically designated depreciation accounts had been maintained by the predecessor corporations through the straight-line or some other acceptable method. *Boston & Maine Railroad, supra,* p. 1526. It must be remembered that the Commissioner accepted the retirement method of accounting as properly reflecting the income of the predecessor corporations and their accounting for depreciation sustained during the period from and after February 28, 1913, through January 31, 1944. We agree with the petitioner that no adjustment is "proper" to $2,141,980, which is the "substituted basis" in petitioner's hands, under section 113 (b) (1) (B) with respect to the period from and after February 28, 1913, through January 31, 1944. One reason for this conclusion is that under the retirement method of accounting all the assets owned by each of the predecessor railroad companies were treated as a composite unit, and the assumption is made "that when such method [retirement] is applied to a taxpayer's holdings as a unit it will reflect 'a reasonable allowance' for depreciation, and that such allowance will approximate the result arrived at by the usual depreciation method." *Chicago & North Western Railway Co., supra,* p. 886. That is to say, the predecessor corporations deducted the cost of restorations and renewals (along with the expenses of maintenance), which under other systems would have been capitalized; they also deducted the cost of an item upon its retirement. These deductions "are considered to be the rough equivalent of other methods of recovering cost through deductions for depreciation." *Los Angeles & Salt Lake Railroad Co., supra,* p. 648; *Boston & Maine Railroad, supra,* p. 1528.

The respondent, in disallowing part of the deduction for depreciation for each taxable year which petitioner took in its returns, adjusted the substituted basis of the acquired assets in petitioner's hands by setting up as a "reserve for past depreciation," 30 per cent of the substituted basis. This represented the respondent's view that the ledger cost of the acquired assets which was carried over to petitioner, namely, $2,141,980, did not reflect depreciation allowed (but not less than the amount allowable) with respect to the period after February 28, 1913, through January 31, 1944. In making this adjustment the respondent has refused to accept the theory underlying the retire-

ment method which was an approved standard method of accounting of railroad companies. He has made this adjustment in this case in spite of the principle which has now received repeated judicial approval that, as stated in *Boston & M. R. R.* v. *Commissioner, supra:*

the underlying theory of the retirement method is that the charges to expense on account of all the items replaced or retired in any particular year are taken as a rough equivalent of what would be a proper depreciation allowance for all the working assets of the company for that year.

Under this theory of retirement accounting, therefore, the figure of $2,141,980 on January 31, 1944, reflects the proper depreciation allowances for the period February 28, 1913, through January 31, 1944, for all the roadway assets as a unit, as of January 31, 1944, and (B) of section 113 (b) (1) is not applicable. It is so held.

Also, the respondent's adjustment, the setting up of a 30 per cent "reserve for past depreciation," would have the effect of requiring petitioner to make an adjustment to the substituted basis for past depreciation which would, in effect, duplicate what already was done by its predecessors under the retirement method. See *Boston & Maine Railroad, supra,* p. 1528, where we said that the effect of the adjustment would be to require a double adjustment. We agree with the petitioner on this point.

Another reason why the respondent's determination is wrong is because it fails to restore to the capital accounts of the predecessor corporations expenditures for renewals, restorations, additions, replacements, and betterments which were charged directly to current expense, and were deducted as expense, and were never reflected in the capital account under the retirement method during the period after February 28, 1913, through January 31, 1944. Paraphrasing what we said in *Los Angeles & Salt Lake Railroad Co., supra,* at pp. 648 and 649, no fair approximation of the predecessor corporations' investment in the railroad properties as a unit, for the purpose of making proper adjustments to the substituted basis in petitioner's hands for past depreciation, is feasible "without the details of both expenditure and depreciation; * * *" "* * * we cannot regard it as proper to make an adjustment in one direction while recognizing the impossibility of others of a compensating character." The respondent recognizes and admits the impossibility of restoring to the capital accounts all of the properties used in the railroads of the predecessor corporations, those expenditures of a capital type which were not capitalized under the retirement method. Because of that impossibility he adopted the percentage, 30 per cent of $2,141,980, as a "reserve for past depreciation" under the principle of *Cohan* v. *Commissioner,* 39 F. 2d 540. Furthermore, he has made his determination under section 41 of the Code because it is impossible under the retire-

ment method used by the predecessor corporations to literally apply the provisions of (B) of section 113 (b) (1) which refer to exhaustion, wear and tear, and obsolescence to the extent allowed but not less than the amount allowable. Under the retirement method, depreciation deductions, as such, are not allowable, and depreciation deductions, as such, were not allowed to the predecessor corporations. Respondent has acted under section 41 of the Code, he says, "in such way as to insure the clear reflection of income by petitioner while at the same time conforming with the intent and purpose of section 113 (b) (1) B." We are unable to find any reason why the reasoning of *Los Angeles & Salt Lake Railroad Co.*, *supra*, should not be applied in this case, under this issue, and applying the reasoning of that case here we must conclude that respondent's adjustment of the substituted basis for past depreciation is not "proper." In the face of that conclusion, there is no ground for respondent's resort to the provisions of section 41. In *Boston & Maine Railroad*, *supra*, at p. 1527, we noted that the Commissioner in that case sought to apply the principle established in the *Cohan* case, but we were not persuaded that it was either necessary or proper for the Commissioner to use the device approved in the *Cohan* case for purposes of section 113 (b) (1) where the retirement method had been used.

A further reason why the respondent's determination is wrong is that his establishment of a so-called "reserve for past depreciation" (30 per cent) actually reduces the substituted basis by 30 per cent allowing petitioner the right to recover through depreciation deductions only 70 per cent of the substituted basis. On this point we agree with petitioner. The petitioner is required by section 113 (a) (20) to take the basis of its predecessors. The theory underlying allowance for depreciation is that capital shall be recovered, or replaced, by depreciation allowances. *United States* v. *Ludey*, 274 U. S. 295. There is no evidence that the predecessor corporations did not properly use the retirement method taking each year, during the period in question, the deductions which, under the retirement method, were in lieu of annual depreciation allowances. The retirement method was proper; it was properly applied by the predecessor corporations. Petitioner should not be denied the full benefit of the use of the straight-line depreciation method merely because its predecessors used the retirement method. It must be assumed in recognition of the principles and theory of the retirement method that the capital accounts of the predecessors on January 31, 1944, totaling $2,141,980, which is the aggregate basis of the assets as a unit, reasonably reflected current investment in the acquired assets, as would have been true if the predecessors had used the straight-line or some other acceptable method. Regulations 111, section 29.23 (1)–5, does not limit the method for recovering capital to making charge-offs in equal annual installments,

so long as the accounting system which is used, such as the retirement method, is adapted to the taxpayer's business and is "in accordance with any other recognized trade practice." *Chicago & North Western Railroad Co.*, *supra*, p. 885. Accepting the theory of the retirement method as sound, the petitioner is entitled to recover all of its substituted basis, using the straight-line depreciation method, by charging off the substituted basis over the remaining useful life of the assets unexpired at February 1, 1944, in equal annual installments. Respondent improperly reduced the capital sum to be recovered by petitioner through annual depreciation allowances to 70 per cent.

In allowing petitioner to use the substituted basis which it has taken from its predecessors, without any adjustment for alleged past depreciation, it will not follow that annual depreciation allowances spread over the remaining useful life of the assets unexpired on February 1, 1944, will result in any double recovery of capital which, of course, is what section 113 (b) (1) (B) is intended to prevent. See explanation in House Ways and Means Committee Report No. 708, 72d Cong. 1st Sess., *supra*. Under the theory of the retirement method, the basis carried over to petitioner, namely, $2,141,980, reflects the accounting for depreciation sustained during the period after February 28, 1913, for the assets as a unit, *Boston & Maine Railroad*, *supra*, and, therefore, represents the net capital investment of the predecessor corporations in the assets, as a unit, or the capital investment which they would have recovered under the retirement method if they had continued to own the assets in question.

Also, in allowing petitioner to use the substituted basis without the adjustment which the respondent has made, the annual depreciation deductions which petitioner will take under the straight-line depreciation method will not constitute "an effort to make up for the failure to take any prior yearly 'depreciation' * * *" on the assets. *Virginian Hotel Corp. of Lynchburg* v. *Helvering*, 319 U. S. 523, does not apply for the reason that depreciation, as such, was not "allowable," during the years the assets in question were held by the predecessor corporations. See *Kansas City Public Service Co.* v. *United States*, *supra*; *Boston & M. R. R.* v. *Commissioner*, *supra*.

It is held that under the circumstances here present, the adjustment of the basis of the predecessor corporations which the respondent has made is not "proper" under (B) of section 113 (b) (1). Consequently it is not a proper adjustment under section 113 (b) (2), and accordingly need not be made.

All of the contentions of each party have been considered. The briefs of each party are exhaustive and thorough. It is not necessary in order to decide the question to set forth all of petitioner's or all of respondent's contentions. The foregoing covers the chief points involved in disposing of this issue.

3. *For the purpose of computing losses sustained in 1944 and 1945 upon the retirement of certain assets, is adjustment of basis "proper" with respect to a period prior to March 1, 1913, for depreciation to the extent sustained under section 113 (b) (1) (C)?*

This question is controlled by the *Los Angeles & Salt Lake Railroad Co.*, the *Boston & Maine*, and the *Union Pacific* cases, *supra*. The reasoning of this Court in *Boston & Maine Railroad*, *supra*, p. 1528, upon this question was approved by the Court of Appeals for the First Circuit. We repeat what was said in *Boston & Maine Railroad* at p. 1528:

we think it well settled that where the retirement method of accounting is properly and correctly established and maintained the original cost of items of roadway property installed prior to March 1, 1913, is not to be reduced by depreciation sustained to that date in computing and determining the amount of deduction to which a railroad is entitled upon the retirement of such property. The reason is that an accounting has already been made for the depreciation sustained through the direct charge to expense or profit and loss of expenditures which under other methods of accounting would have been capitalized and through the prior retirement, over the life of the property currently being retired, of other items of roadway property at their original costs. * * * To hold in such circumstances that the original cost of the items currently being retired must also be reduced for depreciation sustained to March 1, 1913, would, in effect, be to require a railroad to make a double adjustment of the basis of its properties for depreciation.

Under the above reasoning, this proceeding is not distinguishable from the *Los Angeles & Salt Lake Railroad* and the *Boston & Maine* cases, *supra*. That petitioner uses the straight-line depreciation method, whereas in the cited cases the taxpayers used the retirement method, makes no difference in applying the above reasoning here. Respondent admits that he disagrees with the cited authorities. He offers nothing in this case by way of argument or otherwise which he did not present in the cases relied upon. We do not sustain the respondent under this issue because to do so would be to require petitioner to make an adjustment to the basis of the properties retired in 1944 and 1945, which were acquired by the predecessor corporations before March 1, 1913, which would, in effect, duplicate what already was done by the predecessors under the retirement method, in computing its losses upon retirement of the properties. It is held that under section 113 (b) (1) (C) it is not "proper" to adjust the basis of the assets which petitioner retired in 1944 and 1945 for pre-1913 depreciation.

The pleadings present the question whether the petitioner is entitled to a deduction in 1948 in the amount of $26,030 because of a long-term capital loss sustained in that amount in 1948. The question arises under section 117 (d) (1) of the Code. The respondent asserts that the deduction claimed for 1948 was properly disallowed because of

the provisions of section 117 (d) which limits deduction for capital losses to the amount of capital gains in the same period. The respondent points out, also, that the question of whether the capital loss does or does not result in a capital loss carry-over to another taxable period under section 117 (e) is not an issue in this proceeding. Since the petitioner's brief does not deal with these questions, and since the parties have entered into a stipulation under this issue, we understand that the matter will be taken care of in a Rule 50 computation.

A computation under Rule 50 will be necessary since other adjustments made by the respondent are conceded as proper by the petitioner.

*Decision will be entered under Rule 50.*