Whitaker, Judge,
delivered the opinion of the court:
This is a suit for refund of income taxes for tiie year 1944. Plaintiff was a stockholder in S. C. Parker and Company, *729 Inc., which in October 1944 was liquidated and its assets distributed to its stockholders, including plaintiff. The transaction comes within the provisions of section 112 (b) (7) of the Internal Revenue Code of 1939, as added by the Act of 1943, 58 Stat. 21, so that plaintiff, for tax purposes, stands in the shoes of the corporation.
This company owned bonds in the face amount of $77,000 of the International Railway Company. The Railway Company, having experienced difficulty in meeting the 5 per cent interest payments on its bonds, devised a plan whereby the bondholders would consent to a reduction to 3 per cent in the interest rate until such time as the company had sufficient earnings to again pay the full rate and the accumulated unpaid 2 per cent.
A majority of the bondholders agreed to the plan and their bonds were stamped with an appropriate endorsement, but the Parker Company refused to consent to it until in September 1942 the Railway Company agreed to pay to it $100 for each $1,000 face amount of the bonds held by it, as an inducement for its consent. Its consent was given and $7,700 was paid to the Parker Company.
The question presented is whether this payment was income or a return of capital. The amount was entered on the company’s books as a return of capital, thus decreasing the cost of the bonds, as carried on the books of the company. If, in fact, this amount was income, it should have been carried as a part of earnings accumulated up to the time of liquidation, and, when plaintiff received her proportionate amount of the assets upon liquidation, she was obligated to report her ratable share of the $7,700 as taxable income.
We think that the amount received by the Parker Company, in return for its consent to the reduction in the interest rate, was not a return of capital, but was taxable income under the provisions of section 22 (a) of the Internal Revenue Code. It was received in lieu of interest. Perhaps more accurately stated, it was received in consideration of the Parker Company’s agreement to reduce the interest rate. Had the Parker Company not consented to the agreement, the Railway Company would have been obligated to pay the full 5 per cent interest on the bonds held by it. In order to *730 induce tbe Parker Company to accept a lesser amount of interest, it paid the amount of $100 on each bond. This payment was made in lieu of the payment of interest, and it should be treated as such.
It could not be a return of capital, because the face of the bonds remained exactly the same as they were before. When the bonds became due, the holder was entitled to receive their full face value.
The fact that their market value may have been reduced by the reduction in the interest rate is of no significance. Fluctuations in market value are never to be accounted for in the computations of net income subject to tax until the gain or loss becomes an accomplished fact. The $7,700 cannot be treated as a reimbursement for a loss on the bonds until the loss is sustained, by a sale of the bonds or otherwise.
The facts in the case at bar and in the cases in the Tax Court relied on by plaintiff (Union Pacific Railroad Co., v. Commissioner, 14 T. C. 401; Sheip Mfg. Co., v. Commissioner, 8 T. C. M. 673, and others) are altogether different. In those cases there was a reissue of bonds to all bondholders on the same basis. In this case there was merely a temporary reduction in interest; there was no reissue; the old bonds were stamped with an endorsement. All the bondholders agreed to the plan except the Parker Company, and a few others. The payment in question was made only to it and to a few others; it was not made to all bondholders. The transaction could not possibly be considered an exchange of one issue of bonds for another, which were the cases with which the Tax Court was concerned.
The payment was made as an inducement to the agreement to a reduction in interest, and is income quite as much as the waived interest would have been.
Plaintiff is not entitled to recover, and her petition is dismissed.
It is so ordered.
Laeamoke, Judge; MaddeN, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
*731 FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Donald E. Lane, and the briefs and argument of counsel, makes findings of fact as follows:
1. This is a suit to recover $527.82, plus interest, for income taxes assessed and paid for the year 1944. The plaintiff, Temple E. Eeggio, formerly Mrs. Temple E. Parker, now resides in the State of Connecticut. The plaintiff filed her federal income tax return for the calendar year 1944, showing an address thereon at Buffalo, New York, with the Collector of Internal Eevenue for the 28th District of New York, and paid the tax of $2,991.24 shown to be due thereon. Under date of July 23, 1946, the plaintiff received a refund of $54.25.
2. After an examination of the plaintiff’s records by an internal revenue agent, an additional tax in the sum of $1,282.74 was determined and assessed against her for the year 1944, together with interest thereon of $250.98, which she paid on July 8, 1948. In the determination of such deficiency in tax, the taxable net income of the plaintiff was increased as follows:
Taxpayer’s ratable share of earned surplus of S. C. Parker & Co., Inc., at October 24, 1944, the date of liquidation of the company_$5,009. 32
The ratable share of earned surplus of such company reported in her return_ 1, 860. 50
Additional income_ 3,148.82
Also, as a result of this adjustment, the capital gain realized on the sale of securities received through the liquidation and dissolution of S. C. Parker & Co., Inc., was reduced $141.25, and the plaintiff’s income for the year 1944 was decreased by this sum. The plaintiff, on May 20, 1948, filed a waiver of restrictions on assessment and collection of deficiency in tax (Form 870) agreeing to the immediate assessment and collection of the said deficiency of $1,282.74 for the year 1944.
3.The plaintiff, on September 7, 1948, filed with the collector at Buffalo a claim for refund in the amount of $527.82 for the year 1944. The ground stated therein for claiming said refund was as follows:
*732 The taxpayer was a qualified electing shareholder in S. C. Parker & Co., Inc., which liquidated under Section 112 (b) (7) of the Internal Eevenue Code. As such, she was required to report as ordinary income her ratable share of the corporation’s surplus on liquidation. The Eevenue Agent in Charge at Buffalo, New York, increased, on audit, such surplus by including the amount of $7,700.00 in accumulated earnings of the corporation. This amount represents cash received upon the refunding of International Eailway Company bonds. The refunding was a tax-free transaction, the cash received was less than the corporation’s cost and was a return of capital. The taxpayer claims that the inclusion of such amount in earned surplus is erroneous and asks that the income tax paid as a result thereof be refunded to her with interest. The taxpayer’s share of surplus was overstated by the Commissioner in the amount of $1,166.45.
4. Said claim was rejected in full by the Commissioner of Internal Eevenue and notice of such rejection was mailed to the plaintiff by registered mail on June 30,1949. The rejection notice did not state the reason the claim was rejected.
5. The plaintiff was a qualified electing shareholder, owning preferred, Class A, common and management stock, in S. C. Parker & Co., Inc., which was liquidated October 24, 1944, and, at the request of that company, the tax consequence was determined as provided in Section 112 (b) (7) of the Internal Eevenue Code of 1939, as added by Section 120 of the Eevenue Act of 1943, which requires a corporation to fully liquidate within a one-month period. As such stockholder, the plaintiff was required by the Internal Eevenue Code to report as taxable income her ratable share of the corporation’s earned surplus on liquidation. S. C. Parker & Co., Inc., reported in its federal corporation income tax return for the period of May 1, 1944, to October 24, 1944, earned surplus of $12,302.66 as of October 24, 1944. The plaintiff reported in her 1944 return as taxable income $1,860.50 as her ratable share of this reported earned surplus.
6. An examination of the liquidating corporation’s books and records by an internal revenue agent resulted in a determination that the corporation’s earned surplus as of October 24, 1944, was $33,124.37. Plaintiff’s ratable share of such *733 determined earned surplus was $5,009.32, according to the revenue agent’s computation.
7. In revising the earned surplus figure from that originally submitted by the corporation on its 1944 income tax return, the revenue agent included therein the sum of $7,700 cash received by S. C. Parker & Co., Inc., during its fiscal year ended April 30, 1943, from the International Railway Company through the corporate trustees for the 5% International Railway Company’s refunding and improvement bonds due November 1, 1962. The $7,700 was paid S. C. Parker & Co., Inc., when $77,000 face amount of such bonds which were owned by the corporation were turned in for the purpose of having stamped on each bond a statement of the reduction of interest payable thereon to a minimum of 3% until International Railway Company’s net income was sufficient to pay a higher amount and the accumulated 2% difference between the reduced interest rate and the originally stated 5% rate. The Commissioner of Internal Revenue included this sum of $7,700 in the taxable income of S. C. Parker & Co., Inc., for the fiscal year ended April 30, 1943, and, by reason of such inclusion, the tax determined to be due thereon was $692.93. Through its president, Mr. Selby C. Parker, S. C. Parker & Co., Inc., executed, on December 26,1944, a waiver of restrictions on assessment and collection of deficiency in tax (Form 870) agreeing to the immediate assessment and collection of the said deficiency of $692.93 for the fiscal year ended April 30,1943. The assessment was subsequently paid by the corporation.
8. The president of S. C. Parker & Co., Inc., testified with reference to his execution of the said waiver of restrictions on assessment and collection of deficiency that by signing the waiver he simply indicated that he was willing to pay the additional amount demanded. He testified that there were a number of things done by the corporation at the time in order to speedily liquidate because the liquidation was to be completed within one month and it was necessary to settle many items.
9. The details of the receipt of the aforesaid sum by S. C. Parker & Co., Inc., are as follows: On or about July 21,1938, the International Railway Company, with offices at *734 Buffalo, New York, proposed, by letter of its president to the holders of its 5% mortgage refunding and improvement bonds, that they concur in a plan to meet certain difficulties which had arisen with respect to the payment of interest on said bonds. A copy of said letter to bondholders is attached to the Stipulation of Facts filed herein, is marked “exhibit C,” and is incorporated herein by reference. The instrument mentioned1 in said letter to bondholders was entitled “Concurrent Instrument to be executed by holders of International Railway Company Refunding and Improvement Bonds.” A copy of said concurrent instrument is also attached to the Stipulation of Facts filed herein, is marked “exhibit D,” and is incorporated herein by reference. S. C. Parker & Co., Inc., did not execute the concurrent instrument providing for the acceptance of a reduction in the interest rates from 5% to 3% on the International Railway Company bonds at the time the proposal was made in 1938.
10. Mr. S. C. Parker testified that S. C. Parker & Co., Inc., did not like the idea of agreeing to a reduction of interest to 3% until the International Railway Company could again pay a higher amount or the 5% rate plus accumulations, as provided in the concurrent instrument, and consequently did not go along with the proposal in 1938. Mr. Parker testified that thereafter Mr. B. J. Yungbluth, president of International Railway Company, approached him informally at their club from time to time during a period of years after July 21, 1938, in an endeavor to have S. C. Parker & Co., Inc., turn in their bonds. Mr. Parker testified that when Mr. Yungbluth asked if he would consider turning in the bonds on any kind of a basis, he replied to the effect that if something were paid on the transaction because of loss of value in the bonds by having them stamped, the turn-in would be considered. From these discussions there grew a program for the payment of $100 per $1,000 bond to S. C. Parker & Co., Inc., for each bond turned in for stamping thereon of the temporary reduction in interest. The program was set forth in a letter to Mr. Yungbluth dated September 30,1942, signed by S. C. Parker as president of S. C. Parker & Co., Inc., and said letter was endorsed *735 by Mr. Yungbluth as being in accordance with, his understanding of their agreement. This letter reads as follows:
Mr. Bernard J. Yungbluth
Walbridge Building
Buffalo, N. Y.
Dear Mr. Yungbluth:
Reference is made to the letter dated July 21, 1938, and the concurrent instrument attached thereto, which International Railway Company forwarded to holders of International Railway Company Refunding and Improvement 5% Gold Mortgage Bonds, due November 1, 1962. We and certain of our clients hold $132,000 par value of the Refunding and Improvement 5s which have not been subjected to the terms and provisions of the concurrent instrument and, therefore, have not been stamped with the endorsement therein provided for.
It is our understanding that you agree to pay us the sum of $100 per $1,000 par value of bonds for not less than $120,000 par value, and not more than $132,000 par value, of the bonds above mentioned which shall be subjected to the terms and provisions of the concurrent instrument and stamped with the endorsement therein provided for, in accordance with this agreement.
The bonds to be subjected to the terms and provisions of the concurrent instrument, and stamped with the endorsement therein provided for, with the November 1, 1938 and all subsequent coupons attached, shall be deposited by us or our agent in escrow with the Marine Midland Trust Co. of New York, 120 Broadway, New York, N. Y., accompanied by concurrent instruments signed and acknowledged by the respective owners of the bonds, on or before the close of business Saturday, October 10, 1942. As soon as you are, or your agent is, satisfied that the bonds deposited in escrow are genuine and Bankers Trust Company is satisfied that the concurrent instruments are properly executed and acknowledged. you agree to pay to the Marine Midland Trust Co. of New York for our account the sum of $100 per $1,000 par value of International Railway Company Refunding and Improvement 5% Gold Bonds, due November 1, 1962, deposited in escrow hereunder, and concurrently with the making of such payment, the Marine Midland Trust Co. of New York shall deliver the signed and acknowledged concurrent instruments to Bankers Trust Company and present the bonds deposited in escrow to Bankers Trust Company to be stamped by it *736 with, tbe endorsement provided for in tbe concurrent instrument.
After sucb bonds have been so stamped, Bankers Trust Company shall deliver them to the Marine Midland Trust Co. of New York with the November 1, 1938 and all subsequent coupons attached. Thereupon the past due coupons attached to such bonds shall be presented to Marine Midland Trust Co. of New York, 120 Broadway, New York, N. Y., for payment of the accrued interest on such past due coupons at the rate of 3% per annum in accordance with the terms of the concurrent instrument.
Nothing in this arrangement or this agreement shall be construed to operate to make the bonds which shall be subjected to the terms and provisions of the concurrent instrument and stamped with the endorsement provided for therein, pursuant to this arrangement and agreement, any different from any bonds which heretofore have been subjected to the terms and provisions of the concurrent instrument and stamped with the endorsement therein provided for.
This agreement shall be binding on us only if we receive your signed acceptance in our office, 1031 Ellicott Square, Buffalo, N. Y., on or before 3 P. M. Thursday, October 1, 1942.
The bonds which are the subject matter of this agreement are now owned by the following:

Par Value

S. C. Parker & Co., Inc._$ 77,000
Ellicott Traders, Inc._ 30, 000
Tonawanda Share Corporation_ 11,000
Selby C. Parker- 2,000
Charles W. Parker_ 2,000
Weston M. Carroll_ 10,000
Total _ 132,000
The writer, as President of each of the three corporations named above, has authority from each of said corporations to agree that the bonds owmed by them, respectively, shall be subjected to the terms and provisions of the concurrent instrument and shall be stamped with the endorsement therein provided1 for; and this proposition is made for your acceptance in whole and not m part, except as hereinafter stated with respect to the bonds owned by Charles W. Parker and Weston M. Carroll, respectively. Payment of the sum of $100 per $1,000 par value of bonds, hereinabove provided for, shall be made to the Marine Midland Trust Co. of New York within five days after you have been notified by the Marine Midland Trust Co. of New York that the *737 bonds and concurrent instruments are- available for inspection and Bankers Trust Company has notified you that all of the concurrent instruments are signed and acknowledged in form satisfactory to Bankers Trust Company. In the event that Bankers Trust Company shall not be satisfied with the signature or acknowledgment of the concurrent instruments accompanying the bonds, or any thereof, as originally deposited in escrow, you are to notify us promptly and we will attempt promptly to deposit in escrow with the Marine Midland Trust Co. of New York concurrent instruments, to accompany such bonds, signed and acknowledged in form satisfactory to Bankers Trust Company, and if, on or before October 20,1942, the Bankers Trust Co. shall not have stamped the deposited bonds, we shall be permitted to withdraw from this arrangement and have our unstamped 5s returned to us.
In the event that Charles W. Parker and Weston M. Carroll, respectively, shall participate in this arrangement and agreement, you shall be obligated to accept the aforesaid bonds owned by them, respectively, as part of the bonds covered by and included in this agreement; but in the event that they, respectively, shall not participate in this arrangement and agreement, the aforesaid bonds owned by them, respectively, shall not be covered by or included in this agreement.
This agreement has been written and signed in duplicate. Please sign below, signifying your acceptance, and return one copy for our files.
Yours very truly,
S. C. PARKER & Co., Inc.,
Sgd. Selbt C. Parker,
President.
SCP: DE
The above is my understanding of our agreement.
Sgd. Bernard J. Yungbluth, Bernard J. Yungbluth.
11. The terms and conditions set forth in the letter agreement of September 30, 1942 were fulfilled. S. C. Parker & Co., Inc., turned in the bonds for endorsement thereon of the agreement to accept 3% interest in lieu of the stated 5%, and thereupon received the sum of $7,700 from the International Eailway Company. After endorsement, the identical and full $77,000 face amount of the International Eailway Company bonds was returned to S. C. Parker & Co., Inc. The Parker corporation did not dispose of any gold bonds to the *738 International Railway Company or to anyone else but retained ownership of the entire $77,000 face amount of the bonds after receiving said payment of $7,700 upon consummation of the agreement set forth in said letter of September 30, 1942. No sums were paid by the International Railway Company to S. C. Parker & Co., Inc., on the bonds owned by the latter company during the period commencing with the interest payment due on November 1,1938, until the payment of $7,700 in 1942. Thereafter, S. C. Parker & Co., Inc., turned in their bond coupons and received the agreed 3% interest due November 1,1938, and for each subsequent year through November 1,1942.
12. The $77,000 face amount of International Railway Co. Ref. & Imp. 5s was listed in inventory in the investment account ledger of S. C. Parker & Co., Inc., as costing $28,702.50 as of May 1,1942. The listing of said bonds was transferred October 16, 1942, to a new ledger sheet entitled International Railway Co. Ref. & Imp. 3-5s. A ledger entry dated December 18,1942, reads “Fee rec’d. on 77 M IRC Bds when stamped 3-5s (To reduce cost of Bds)- — $7,700.” A further entry, on December 31, 1942, reads, “To close into Profit and Loss,” and indicates an adjusting debit of $148.75 net against these bonds. The investment account ledger thereafter carries the 77 M International Railway Co. Ref. & Imp. 3-5s bonds during the calendar year 1943 at $21,151.25. This figure may be derived as follows:
Entry May 1, 1942 _$28, 702. 50
Less fee reed. Dee. 18,1942 _ 7, 700.00
Reduced cost_ 21, 002. 50
Plus net debit Dee. 31, 1942 _ 148. 75
Indicated cost for 1943 _ 21,151.25
13. S. C. Parker & Co., Inc., was liquidated on October 24, 1944, and was formally dissolved under the Stock Corporation Law of the State of New York on October 25, 1944. The stockholders of the company received their proportionate shares of the assets of the corporation, based upon the number of shares of each class held by them in relation to the total number of shares outstanding. The plaintiff’s stock-holdings in S. C. Parker & Co., Inc., consisted of 60 shares no par management shares out of a total of 400 outstanding, *739 72 shares of no par Class A shares out of a total of 969 outstanding, 1232 shares of $1 par common stock of which 7,500 were outstanding, and 83 shares of $5 preferred stock of which there were 57,600 shares outstanding at the time of the liquidation. The management stock was the only stock carrying voting privileges. The balance of the management stock not owned by the plaintiff was owned by her former husband, Selby C. Parker.
CONCLUSION or LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and her petition is therefore dismissed.